IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:15-CV-87-FL

| | | |
|---|---|---|
| CHARLES E. WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.O. STEVENSON, INC.; STEVENSON | ) | |
| AUTOMOTIVE, INC.; SAG PAYROLL, | ) | ORDER |
| LLC; STEVENSON AUTOMOTIVE | ) | |
| HOLDING COMPANY, LLC, *doing* | ) | |
| *business as* Stevenson Automotive Group; | ) | |
| and JOHN O. STEVENSON, *individually*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motion to dismiss of defendants J.O. Stevenson, Inc.

("J.O. Stevenson"), Stevenson Automotive, Inc. ("Stevenson Automotive"), SAG Payroll, LLC

("SAG Payroll"), and Stevenson Automotive Holding Company, LLC ("SAG Holding")

(collectively the "Stevenson Automotive Group" defendants), made pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a

claim upon which relief can be granted. (DE 24). Also pending before the court is the motion to

dismiss of defendant John Stevenson ("Stevenson"), made under those same rules. The issues raised

have been briefed fully and are ripe for ruling. For the reasons stated more specifically below the

Stevenson Automotive Group defendants' motion is granted in part and denied in part, and certain

of plaintiff's claims are dismissed without prejudice. Defendant Stevenson's motion is granted.

# BACKGROUND

Plaintiff, until his termination in February 2014, was the sales manager of Stevenson Kia of Jacksonville ("Stevenson Kia"), an automobile dealership located in Jacksonville, North Carolina. Stevenson Kia is one of several dealerships owned and operated by defendant J.O. Stevenson. Defendant J.O. Stevenson, in connection with the other Stevenson Automotive Group defendants, is part of the omnibus business entity, "Stevenson Automotive Group." Defendant John Stevenson owns and operates each of the Stevenson Automotive Group defendants.

Plaintiff was employed by one of the Stevenson Automotive Group defendants. However, his employment was terminated on February 20, 2014, some two months after a car accident that left him with cognitive impairment. On May 4, 2015, plaintiff filed suit over the circumstances surrounding his termination, as well as certain allegedly improper payroll practices, which he noticed only after he received his final paycheck. Plaintiff alleges five claims against all defendants. In particular, plaintiff alleges:

- that defendants violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, where defendants interfered with his rights guaranteed by the FMLA and terminated him in retaliation for taking FMLA-guaranteed leave ("Claim I");

- that defendants violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq., where he was actually disabled and defendants failed to accommodate his temporary disability, interfered with the accommodation provided to him, terminated him in retaliation for requesting an accommodation, and terminated him in retaliation for using the accommodation provided to him ("Claim II"); and

2

- that defendants violated the ADAAA where plaintiff was "regarded as" disabled and defendants terminated him as a result of that belief ("Claim III").

In addition, plaintiff contends that he was wrongfully discharged in violation of North Carolina public policy, as established by the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143–422.2, where he was terminated on the basis of his disability ("Claim IV"), and that defendants violated the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95–25.1 et seq., where defendants improperly retained wages or other compensation owed to him from sometime in 2012 until after his termination ("Claim V").

On July 2, 2015, the Stevenson Automotive Group defendants filed the instant motion to dismiss. Those defendants contend that the court lacks subject matter jurisdiction over each of plaintiff's claims because plaintiff has failed to plead facts supporting the inference that any of them were his "employer," as that term is used for the purpose of each statute. In addition, the Stevenson Automotive Group defendants contend:

- Claim I should be dismissed because plaintiff failed to plead sufficient facts to support a claim for interference because he suffered no harm cognizable under the FMLA, and also because he has not shown he engaged in any protected activity that may be the basis for a retaliation claim;

- Claim II should be dismissed because plaintiff failed to plead sufficient facts to support the inference that he is disabled, and because he failed to plead sufficient facts to support the conclusion that his temporary disability was sufficiently serious to qualify as a "disability" under the ADA; and

3

- Claim III should be dismissed because plaintiff failed to allege facts to support the inference that defendants mistakenly believed he was disabled.

In addition, the Stevenson Automotive Group defendants argue that the court should dismiss Claim V because it does not share a "common nucleus of operative fact" with Claim I, Claim II, or Claim III, and, thus, that it would be improper to exercise supplemental jurisdiction over that claim. In any event, the Stevenson Automotive Group defendants also contend that the court should decline to exercise supplemental jurisdiction over both Claim IV and Claim V under 28 U.S.C. § 1367(c), where Claims I through III, the claims over which the court has original jurisdiction, should be dismissed.

On that same day, defendant Stevenson also filed a motion to dismiss. In large part, the arguments made in support of defendant Stevenson's motion mirror those made in support of the Stevenson Automotive Group defendants' motion. However, defendant Stevenson also contends that each of plaintiff's claims, to the extent they are asserted against him in his capacity as owner or manager of the Stevenson Automotive Group, should be dismissed because of his individual status.

In response to defendants' motions, plaintiff contends that, to the extent defendants argue the court lacks subject matter jurisdiction over each of his claims solely because he has failed to plead the identity of his "employer" with sufficient specificity, defendants' motion should be denied, where proof any defendant "employed" the plaintiff is a substantive element of each of his claims, not a jurisdictional issue, and that, in any event, he has pleaded defendants' "employer" status with sufficient specificity to survive a motion to dismiss for failure to state a claim. Plaintiff also contends that defendants' attack on Claim I, to the extent it sounds as a claim for retaliation, is

4

misplaced, because his claim sounds as a "hybrid" interference/retaliation claim. In addition, as to

Claim IV and Claim V, plaintiff argues that Claim IV and V share a common nucleus of operative

fact with Claim I, Claim II, and Claim III, which are properly pleaded and over which the court has

original jurisdiction.

As to Claim II and Claim III, plaintiff concedes that these claims fail as to defendant

Stevenson to the extent they assert his liability in his individual capacity. However, as to Claim II

against the Stevenson Automotive Group defendants, plaintiff contends that they over-state the

"disability" threshold required by the ADAAA. As to Claim III against those same defendants,

plaintiff argues that the ADAAA supplanted the ADA's "mistaken belief" requirement.

## STATEMENT OF FACTS

The court accepts the factual allegations in the complaint as true and summarizes the

following facts pertinent to the instant motions to dismiss. Matrix Capital Mgmt. Fund, LP v.

BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009).

Plaintiff began "working for" defendant Stevenson Automotive, a constituent part of the

Stevenson Automotive Group, in November 2003 as a sales consultant. (Compl., DE 8, ¶¶12–31).[1]

After a short time, plaintiff began to rise through the ranks, becoming the Finance Manager and a

Sales Manager for Stevenson Kia, an automobile dealership owned by defendant J.O. Stevenson,

in 2007; eventually he became the General Sales Manager for Stevenson Kia in 2009. (Id. ¶¶12,

32–33). In his position as General Sales Manager of Stevenson Kia, plaintiff turned the sales of the

---

[1] Plaintiff does not specifically allege that defendant Stevenson Automotive was his employer at the time of his termination. Read in context, plaintiff alleges that he was working for each of the Stevenson Automotive Group defendants at the time of his termination.

previously-struggling dealership around, making it "one of the top Kia dealerships . . . in the nation." (Id. ¶¶41–44).

As General Sales Manger of Stevenson Kia, plaintiff reported directly to Paul McCarthy, the Stevenson Automotive Group's Corporate Executive General Manager, who was employed by all Stevenson Automotive Group defendants.  (Id. ¶¶18.e, 30, 35–36).  McCarthy, in turn, reported to defendant Stevenson, the owner, manager, and chief executive officer ("CEO") of defendant J.O. Stevenson, as well as the other Stevenson Automotive Group defendants.  (Id. ¶¶16, 18.f, 35). McCarthy was not the only shared employee; the Stevenson Automotive Group defendants employed a number of other overlapping executives including Charlie Daniel, the Stevenson Automotive Group defendants' Corporate Assistant General Manager; Steve Davis, the Stevenson Automotive Group defendants' Human Resources Director; and Wayne Fortier, the Stevenson Automotive Group defendants' Chief Financial Officer.  (Id. ¶¶18.e, 30).

In addition to these shared employees, the Stevenson Automotive Group defendants overlap in other ways.  For example, defendant SAG Payroll handles financial and employment matters for the remaining Stevenson Automotive Group defendants.  (Id. ¶¶18.a).  The Stevenson Automotive Group defendants, along with their manager and CEO, defendant Stevenson, also use an integrated system to document sales made by the "Stevenson Automotive Group," a common web page, and an integrated marketing scheme  (Id. ¶¶18.b–18.c).  Finally, McCarthy manages each of the Stevenson Automotive Group defendants as if they were one, joint entity.  (Id. ¶18.d).[2]

---

[2] In their recitation of the facts, the Stevenson Automotive Group defendants suggest that defendant SAG Holding is not connected to the other Stevenson Automotive Group defendants.  At the motion to dismiss stage, the court considers only the facts as they are alleged in the complaint.

6

From the time plaintiff assumed his position as General Sales Manger of Stevenson Kia until December 5, 2013, plaintiff's work was recognized and complemented by both McCarthy and defendant Stevenson, and defendant Stevenson lauded plaintiff as an exemplar of the "operational and management excellence" he sought from all similarly situated employees. (Id. ¶¶45–48). Plaintiff's fortunes changed on December 5, 2013, when he was involved in a severe car accident that caused a concussion and swelling in his neck and head. (Id. ¶49). Shortly after the accident, plaintiff began slurring his words and became increasingly confused and disoriented. (Id. ¶50). Plaintiff was not scheduled to work on December 6, 7, or 8, 2013. (See id. ¶58). However, on December 7 or 8, 2013, plaintiff contacted McCarthy to inform him of the accident. (See id. ¶57). During that conversation, plaintiff told McCarthy that "he did not believe he was able to return to work" as scheduled, to which McCarthy responded "that's what you need to do; sit home in self-pity feeling sorry for yourself." (Id.).

Plaintiff returned to work as scheduled on December 9, 2013, but, as a result of his injuries, the quality of plaintiff's work suffered significantly and appreciably. (See id. ¶¶58–60). On December 10, 2013, plaintiff visited a chiropractor who observed that plaintiff "ha[d] signs of a closed head injury with post concussion type of syndrome," and that plaintiff's "speech and awareness [were] affected." (Id. ¶51). Plaintiff's chiropractor stressed the need for a neurological evaluation. (Id.). Later, on December 16, 2013, plaintiff visited a family practice physician who reported similar findings. (Id. ¶52). Specifically, plaintiff's doctor diagnosed him with a concussion and a closed head injury, as well as a depressive disorder. (Id.). Plaintiff's doctor further noted that

7

his "recent memory was abnormal," (id.), but that with proper treatment and rest, the effects of plaintiff's injury would last for less than six months. (See id. ¶¶54, 153).[3]

Shortly thereafter, plaintiff met with defendant Stevenson who, in recognition of plaintiff's injuries, told him "that he could go home until the end of the year if he needed to do so." (Id. ¶61; see also id. ¶¶58–60). Following his conversation with defendant Stevenson, on December 18, 2013, plaintiff met with Davis, who authorized and approved plaintiff for paid leave commencing on December 18, 2013, through the remainder of that year. (Id. ¶62). Davis informed plaintiff that he would be required to produce a doctor's note certifying his readiness to work before he would be allowed to return to work. (Id.).

Between December 19, 2013, and January 1, 2014, while plaintiff was on approved leave, Daniel, at the behest of McCarthy, the Stevenson Automotive Group defendants, as well as defendant Stevenson, contacted plaintiff and "pressured" him to return to work. (Id. ¶64). Specifically, Daniel told plaintiff "that he would not be able to sit at home being non-responsive to work issues and that [he] needed to return to work." (Id.). Following plaintiff's conversation with Daniel, plaintiff reached out to McCarthy to remind McCarthy that he was on approved, paid leave until the end of the year, and that he could not return without a doctor's note, per Davis's instructions. (Id. ¶¶64–65). During the course of that conversation, McCarthy told plaintiff "not to worry about securing a work note from a medical doctor," that he would "handle" Davis, and that plaintiff should return to work by January 2, 2014, "if he wanted to keep his job." (Id. ¶¶65–67).

_____

[3] Plaintiff does not allege with specificity the precise expected duration of his symptoms.

8

Despite attempting to, and ultimately being unable to obtain a doctor's note certifying his readiness to return to work, (id. ¶63), plaintiff returned to work on January 2, 2014. After his return to work, plaintiff "repeatedly" told McCarthy that he "was not himself" and "did not need to be at work"; plaintiff also "repeatedly" asked for "leave" to recover from his closed head injury and seek treatment. (Id. ¶¶70–72). Despite plaintiff's protestations, McCarthy "refused" to grant plaintiff leave and failed to discuss with plaintiff any temporary, alternative or reduced-work arrangement that might assist in plaintiff's recovery. (Id. ¶73). Rather, McCarthy "continued to pressure [plaintiff] to keep working so that he could keep the Stevenson Kia sales volume up." (Id.).

On January 14, 2014, plaintiff was granted leave, albeit for a different, more somber reason. (See id. ¶75). In particular, plaintiff was granted leave from January 15, 2014, through January 26, 2014, following medical confirmation that plaintiff's unborn son had died in utero. (See id.). Following the burial of plaintiff's son, he returned to work on January 27, 2014. (Id. ¶¶75–76).

As of January 27, 2014, plaintiff still was suffering from the adverse effects of his closed head injury, which at that time, included memory loss, cognitive impairment, slurred speech, and his previously-diagnosed depressive disorder. (Id. ¶¶77, 81). The death of plaintiff's son exacerbated his depression and compelled him to seek additional leave. (See id. ¶¶78, 82–83). In particular, plaintiff again informed McCarthy that he was not himself and did not need to be at work. (Id. ¶82). In addition, plaintiff requested leave to recover from his closed head injury and cognitive impairment, as well as recover from his severe depression and to assist his wife who had been admitted to the hospital prior to their son's death. (Id. ¶¶78–79, 83). However, again, McCarthy refused plaintiff's request on behalf of the Stevenson Automotive Group defendants and implored

9

plaintiff to "keep working, keep the Stevenson Kia sales numbers at their historically high levels." (Id. ¶84).

On or around February 10, 2014, plaintiff's depression and memory loss began to worsen, and plaintiff began to suffer from nightmares. (See id. ¶86). As a result, plaintiff requested leave so that he could receive proper treatment and recover from his December 5, 2013, injury. (Id. ¶87). However, despite plaintiff's request, the Stevenson Automotive Group defendants, through McCarthy, refused and further refused to negotiate with plaintiff as to the viability of any alternative work arrangements. (Id. ¶88). On February 20, 2014, McCarthy demanded plaintiff's resignation, citing as his basis Stevenson Kia's decreased profitability, a reason which plaintiff alleges to be false. (Id. ¶¶89–91). Plaintiff refused; reminded McCarthy that had he been provided an appropriate amount of time away from work, he would have recovered earlier; and subsequently was terminated. (Id. ¶¶92–95). Specifically, plaintiff alleges that with proper leave he would have recovered sooner. (Id. ¶93).

Following plaintiff's February 20, 2014, termination he requested all of his unpaid wages, commissions, bonuses, incentives, longevity pay, and vacation pay be remitted to him at the end of the next regularly-scheduled pay period. (Id. ¶96). Following his request, on March 20, 2014, plaintiff received a letter from McCarthy, written on behalf of defendants and dated March 12, 2014, which included a check for Plaintiff's prorated salary, as well as "added compensation" in satisfaction of plaintiff's earned incentive pay. (See id. ¶¶97–98). However, plaintiff's final payment from defendants reflected two alleged accounting errors. First, the added compensation did not accurately reflect the incentive pay owed to plaintiff; plaintiff's incentive pay had been

discounted by an undisclosed method, to which plaintiff had not agreed. (<u>Id.</u> ¶¶98–100). Second, the letter did not address plaintiff's vacation pay or longevity pay. (<u>Id.</u> ¶99).

McCarthy's March 12, 2014, letter, and accompanying check, were the first time plaintiff became aware of an allegedly impermissible system of "charge backs" and "packs" against commissions, bonuses, and incentives, which had been implemented by the Stevenson Automotive Group defendants' Chief Financial Officer, Fortier, some time in 2011 or 2012. (<u>Id.</u> ¶¶100–01). The program was undocumented, had never been reduced to writing, and had been put into place by Fortier without notice to plaintiff or other, similarly situated employees. (<u>Id.</u> ¶¶102–04).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 11, 2014. (<u>Id.</u> ¶105). On February 6, 2015, the EEOC issued to plaintiff a Notice of Right to Sue letter. (DE 8-1).

## COURT'S DISCUSSION

A.      Standard of Review

1.      Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. <u>Bain</u>, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." <u>Id.</u> In that case, "the plaintiff, in effect, is afforded the

same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

2.      Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir.1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

12

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Where a motion to dismiss challenges only plaintiff's failure to allege sufficient facts, any order dismissing the complaint necessarily is without prejudice, unless the court also concludes that an amendment would be frivolous. See Goode v. Cent. Va. Legal Aid Soc., Inc., 807 F.3d 619, 623–24 (4th Cir. 2015).

B.    Stevenson Automotive Group Defendants' Motion

1.    Defendants as Plaintiff's "Employer"

The Stevenson Automotive Group defendants launch a broad-based challenge to plaintiff's allegations that they, collectively, were his "employer." In particular, they argue that plaintiff has failed to plead that each of them are "employers" within the meaning of the relevant statutes, and that plaintiff's complaint contains insufficient factual specificity to move forward under either a "joint employment" or "integrated employer" theory. In response, plaintiff notes that he intends to move forward under either a "joint employment" or "integrated employer" theory, but argues that he has pleaded sufficient facts to do so.

a.    Appropriate Rule for Address

Before turning to the merits of the Stevenson Automotive Group defendants' argument, the court first addresses the parties' disagreement about whether a particular defendant's "employer" status is a jurisdictional fact, or a substantive element of each of plaintiff's claims.

Plaintiff's claims fall into two groups: labor relations claims under the FMLA and NCWHA and civil rights claims under the ADAAA and North Carolina common law. Claims in both groups must be asserted against the plaintiff's "employer," as that term is defined by the relevant statute.

13

Under the relevant labor relations statutes, an "employer" is either a person "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," 29 U.S.C. § 2611(4), or "a person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95–25.2(5). Under the relevant statutes supporting plaintiff's civil rights claims, an "employer" is any person "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calender weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A); accord N.C. Gen. Stat. § 143–422.2.

Historically, on both labor relations and civil rights claims, the Fourth Circuit required district courts to inquire, as a threshold matter, into whether the defendant was an "employer"; the court reasoned that an entity's status as an "employer" was a jurisdictional fact.[4] Hukill v. Auto Care, Inc., 192 F.3d 437, 441 (4th Cir. 1999), abrogated by Arbaugh v. Y&H Corp., 546 U.S. 500 (2006); Woodard v. Va. Bd. of Bar Examiners, 598 F.2d 1345, 1346 (4th Cir. 1979). In Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), the Supreme Court altered that paradigm, holding that, for claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., a particular aspect of the statutory definition of "employer"–the "employee-numerosity" requirement–was a substantive ingredient of a plaintiff's claim for relief.[5] Id. at 514–16.

---

[4] The parties do not suggest that the jurisdictional versus substantive distinction of the "employer" issue, as discussed above in the context of federal law, requires different or additional treatment under North Carolina law. Thus, the court treats the issue the same under both bodies of law.

[5] Title VII, as well as other similar statutes, contain an "employee-numerosity" requirement, which exempts from the statute's reach any potential defendant that does not employ a minimum number of employees. See, e.g., 42 U.S.C. § 2000e(b) (defining an "employer" as having at least 15 employees).

Acknowledging that federal courts are obliged to inquire into their own jurisdiction, even where the parties do not challenge it, the Court reasoned that the "employee-numerosity" requirement was not jurisdictional because "[n]othing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met." Id. at 514.

Even though Arbaugh expressly compels only the conclusion that the employee-numerosity requirement is a substantive ingredient of a Title VII claim, leaving open the possibility that other aspects of the definition as used in Title VII, as well as other definitions of the same term use in various statutes still may be jurisdictional, it is evident that the Arbaugh Court's reasoning sweeps more broadly than the narrow holding of that case. Neither the FMLA, nor the ADAAA, the relevant statutes here, command independent judicial validation of any aspect of the definition of "employer." To the contrary, the "employer" provisions of those statutes are identical to the Title VII provision at issue in Arbaugh. Compare 29 U.S.C. § 2611(4); 42 U.S.C. § 12111(5); and N.C. Gen. Stat. § 95–25.2, with 42 U.S.C. § 2000e(b). Other courts have agreed. See, e.g., Doak v. Johnson, 798 F.3d 1096, 1103–04 (D.C. Cir. 2015) (holding timely exhaustion of administrative remedies not a jurisdictional requirement where Congress has not clearly stated so); Cobb v. Contract Transp., Inc., 452 F.3d 543, 549–50 (6th Cir. 2006) (holding Arbaugh overruled circuit precedent on jurisdictional nature of "employer" status in FMLA cases); Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 356–57 (5th Cir. 2006) (same). Accordingly, the court concludes that, inasmuch as defendants' motions sound under Rule 12(b)(1), they must be denied. However, defendants' motions are susceptible to address under Rule 12(b)(6).

15

b.    The Stevenson Automotive Group Defendants as One "Employer"

Labor relations and civil rights claims both may be litigated against multiple defendants under the theory that they form a single "employer" under either the "joint employment" or "integrated employer" theories of liability.  The "joint employment" theory allows an employee to pursue a labor relations or civil rights claim against a defendant that is not technically his employer, where the plaintiff's work benefits that defendant and the defendant controls certain aspects of the plaintiff's employment.  See Butler v. Drive Auto. Indus., 793 F.3d 404, 408–10 (4th Cir. 2015) (adopting test for civil rights claims); Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 305–06 (4th Cir. 2006) (adopting test for labor relations claims).  In particular, a plaintiff is jointly employed by two or more entities where they each retain sufficient control of the "terms and conditions of the employment of the employees who are employed by the other employer."  Butler, 793 F.3d at 408 (citing Torres-Negrón v. Merck & Co., 488 F.3d 34, 40 n.6 (1st Cir. 2007)) (internal quotations omitted).  "In other words, 'courts look to whether both entities exercise significant control over the same employees.'"  Id. (quoting Bristol v. Bd. of Cty. Comm'rs, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)) (internal quotations omitted).

The "joint employment" doctrine is applied with slight variation in civil rights and labor relation claims.  In civil rights claims, on one hand, the Fourth Circuit has instructed courts to weigh the control exerted over the employee by her or his putative employers, as well as the economic realities of those relationships, in determining whether the plaintiff is jointly employed.  See id. at 414 (summarizing control, economic realities, and hybrid test; adopting hybrid test).  On the other hand, in the labor relations context, the Fourth Circuit has instructed courts to examine only the economic realities of the employment relationship.  See Schultz, 466 F.3d at 304–05; see also Butler,

16

793 F.3d at 409 (describing joint employment theory in labor relations claims as focusing on the economic realities of the putative employment relationship). This difference is attributable to the more expansive definition of "employ" used in the labor relations statutes. See 29 U.S.C. § 203(g) (defining "employ" as "suffer or permit to work"); see also Butler, 793 F.3d at 412 n.10 ("[T]he [Fair Labor Standards Act] uses a different definition of 'employee' such that the statute is not directly analogous to Title VII. . . . As such, [Fair Labor Standards Act] cases employing the economic realities test–and indeed any test–are not particularly transferrable to Title VII cases.").[6]

By contrast, the "integrated employer" doctrine focuses on the interconnectedness of two purportedly independent entities. See Hukill, 192 F.3d at 442, abrogated on other grounds by Arbaugh, 546 U.S. 500 (2006). Separate entities may be a single, "integrated" employer where they share common management, have related operations, share control of labor relations, and have a degree of common ownership or financial control. Id.; see also 29 C.F.R § 825.104(c)(2). Because the integrated employer doctrine highlights the relationship between two or more putative "employers," rather than focusing on their control over the plaintiff employee, as is the case with the "joint employment" doctrine, the same "integrated employer" analysis is applied with respect to both labor relations and civil rights claims. Hukill, 192 F.3d at 442 (collecting cases; noting that the doctrine was adopted for purposes of the Fair Labor Standards Act and later applied to other statutes).

---

[6] Generally, "employee," as that term is used in the various civil rights statutes, is defined by common law. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322–23 (1992); see also Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 219–21 (4th Cir. 1993). However, in the context of labor relations statutes, such as the FMLA or similarly-defined Fair Labor Standards Act ("FLSA"), the term "employee" is defined by statute as to "suffer or permit to work." 29 U.S.C. § 203(g). To "suffer or permit to work" is considered to be a more expansive definition of the term "employee," which requires application of those statutes embracing such definition "to many persons and working relationships, which . . . [otherwise], [would] not [be] deemed to fall within an employer-employee category." Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947).

17

Regardless of the applicable theory, at the motion to dismiss stage the fact-specific inquiry required to determine whether plaintiff is "jointly employed" by two or more defendants, or, similarly, whether those defendants are "integrated employers," is all but impossible. To properly argue the abundant, detailed factors relevant to either consideration a plaintiff likely will require discovery to fully bear out the defendants' relationship to each other, the number of employees over which they share control, the extent of their interconnectedness, or any other number of pertinent considerations. Cf. generally, Grace v. USCAR, 521 F.3d 655 (6th Cir. 2008) (applying joint employer and integrated employer test at summary judgment); Moreau v. Air France, 356 F.3d 942 (9th Cir. 2003) (applying joint employer test at summary judgment). Relatedly, for the court to engage in the careful balancing analysis either test demands on an incomplete record would greatly impede an aggrieved plaintiff's access to justice. Nevertheless, the complaint still must plausibly allege some facts to support either the "joint employment" or "integrated employer" theory, or else risk undermining completely the Twombly-Iqbal standard of pleading. See, e.g., Cano v. DPNY, Inc., 287 F.R.D. 251, 260 (S.D.N.Y. 2012); Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 775–76 (D. Md. 2008). With these standards in mind, the court now addresses the sufficiency of plaintiff's complaint.

i.      Joint Employer - Civil Rights Claims

At the time the parties briefed the instant motion, the Fourth Circuit had not explicitly adopted the joint employment doctrine for civil rights claims. However, recently, in Butler v. Drive Automotive, the court not only adopted the doctrine but also defined several factors that the district court should weigh in assessing a purported joint employment relationship. 793 F.3d at 414. Specifically, the "principal guidepost in the analysis" is the common-law element of control. Id.

18

However, other relevant factors include: 1) authority to hire and fire the individual; 2) day-to-day supervision of the individual, including employee discipline; 3) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; 4) the length of time during which the individual has worked for the putative employer; 5) whether the putative employer provides the individual with formal or informal training; 6) whether the individual is assigned solely to the putative employer; and 7) whether the individual and putative employer intended to enter into an employment relationship. Id.

Plaintiff has failed to plausibly allege that he was "jointly employed" by the Stevenson Automotive Group defendants for purposes of his civil rights claims. Plaintiff does not allege the identity of his actual employer, nor does he identify the employers that purportedly control his day-to-day activities. Here, although plaintiff has alleged that he worked at Stevenson Kia, and suggested that Stevenson Kia was owned by defendant J.O. Stevenson, those facts are not sufficient to plausibly state which of the Stevenson Automotive Group defendants actually employed plaintiff. Rather, plaintiff refers to himself as an employee of "defendants." (See, e.g., Compl. ¶¶26, 30). Although plaintiff need not plead specifically each of the Butler factors at this early stage, at a minimum, he must identify his putative employer and any other putative "joint employers" his work was intended to benefit. In addition, plaintiff must plead facts that suggest the joint employers exercise control over his work, as well as the work of a sufficient number of other employees. Without more factual specificity, plaintiff's civil rights claims, inasmuch as they are predicated on a joint employment theory, cannot proceed.

19

ii.    Joint Employer - Labor Relations Claims

On plaintiff's labor relations claims, a joint employment analysis similarly fails. For the purposes of labor relations claims, a joint employment analysis requires balancing 1) the degree of control the putative employer has over the manner in which the work is performed; 2) the worker's opportunities for profit or loss dependent on his managerial skill; 3) the worker's investment in equipment or material, or his employment of other workers; 4) the degree of skill required for the work; 5) the permanence of his working relationship; and 6) the degree to which the services rendered are an integral part of the putative employer's business. Schultz, 466 F.3d at 304–05. Again, plaintiff's complaint falls short of plausibly alleging that defendants were his joint employers. Its principal shortcoming is the failure to allege sufficient facts to support the first factor, control. Plaintiff does not identify his purported employer. Further, he does not identify any work he did for the benefit of the other defendants. Without that minimum degree of factual specificity plaintiff's joint employment theory of his labor relations claims must fail.

iii.    Integrated Employer

Rather than focus on collective control over a group of employees, the integrated employer doctrine focuses on the overlap between various, and purportedly separate business entities. To determine whether a group of businesses are "integrated," the court focuses on 1) whether they share a common management; 2) the degree of interrelatedness between their operations; 3) the degree of centralization of control of labor relations; and 4) the degree of common ownership or financial control. 29 C.F.R. § 825.104(c)(2)(i)–(iv); Hukill, 192 F.3d at 442. These factors are common across both civil rights and labor relations claims. See id. n.6.; see also Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993–94 (6th Cir. 1997) (applying same factors to ADA claim).

20

As to the Stevenson Automotive Group defendants, plaintiff has pleaded the "integrated employer" theory of liability with sufficient specificity. For example, defendant Stevenson operates and manages each of the Stevenson Automotive Group defendants. (Compl. ¶16). Defendants Stevenson Automotive, SAG Payroll, and SAG Holding all share a principal place of business, (id. ¶¶13–15), and the Stevenson Automotive Group defendants all use a single system to document the sale, titling, reporting, and financing of all vehicles sold. (Id. ¶18.b). In addition, defendant SAG Payroll issues paychecks and tax forms for defendants J.O. Stevenson, Stevenson Automotive, and SAG Holding, (id. ¶18.a), and, as a group, the Stevenson Automotive Group defendants collectively employ a core group of individuals as managers. (Id. ¶30). Finally, each of the Stevenson Automotive Group defendants are owned by defendant Stevenson, (id. ¶¶16, 18f), and rely on a common marketing scheme and web page, branded under the umbrella-name, Stevenson Automotive Group. (Id. ¶18.c). These facts are more than sufficient to successfully state a claim for violation of the civil rights or labor relations statutes at issue under the "integrated employer" theory of liability.

In sum, the complaint cannot be dismissed against the Stevenson Automotive Group defendants for failure to plead the "employer" element of the claims asserted. Although plaintiff has not sufficiently pleaded control to withstand a challenge to the "joint employer" theory of liability under Rule 12(b)(6), he has pleaded sufficient facts to state a claim under the "integrated employer" doctrine. Moreover, the Stevenson Automotive Group defendants do not challenge the

substantive aspects of their potentially-integrated "employer" status, such as the employee-numerosity requirement or the minimum-workweek requirement.[7]

The court now turns to the Stevenson Automotive Group defendants' arguments as they relate to the merits of plaintiff's claims.

2.      Claim I

The Stevenson Automotive Group defendants next contend that plaintiff has not pleaded sufficient facts to survive a motion to dismiss Claim I, his FMLA claim. Specifically, those defendants contend that the facts alleged are illogical and insufficient to state a claim under an "interference" theory of liability and also that, to the extent plaintiff contends he was fired in retaliation for exercising his FMLA rights, that such allegations do not constitute a violation of the FMLA.

The FMLA entitles qualified employees to 12 workweeks worth of leave during any 12-month period for a variety of reasons, including leave taken because of a "serious health condition that makes the employee unable to perform the functions of [his] position" and leave taken "in order to care for the spouse . . . if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1) & (a)(1)(C)–(D).[8] Subject to certain limitations not relevant here, any employee who takes FMLA leave is entitled to be restored either to his previous position, or an "equivalent position," defined as one with equivalent benefits, pay, and other terms and conditions of employment, upon return

---

[7] The Stevenson Automotive Group defendants challenged initially plaintiff's failure to allege facts as to each constituent member's total number of employees. However, these defendants do not challenge that, if considered as a single entity, the numerosity requirement is satisfied. In joint employment or integrated employer cases the "employee-numerosity" requirement contained in both the FMLA and ADAAA is satisfied where the unified employer meets the statutory requirement. See Swallows, 128 F.3d at 993 n.4 (6th Cir. 1997).

[8] The Stevenson Automotive Group defendants do not, at this time, contend that plaintiff's wife was not suffering from a "serious health condition" at the time he took leave on January 14, 2014. Therefore, the court assumes that plaintiff's wife was suffering from such a condition.

from leave. § 2614(a)(1). These affirmative, substantive obligations are known as "prescriptive rights." See Dotson v. Pfizer, Inc., 558 F.3d 284, 294 (4th Cir. 2009). In addition to prescriptive rights, the FMLA also provides "proscriptive" rights, which "protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006); see also § 2615(a); 29 C.F.R. § 825.220(c). An employee's proscriptive rights also protect him from interference with his prescriptive rights. 29 U.S.C. § 2615(a); see also Adams v. Anne Arundel Cty. Pub. Schs., 789 F.3d 422, 426 (4th Cir. 2015).

a.     Interference

To prove an "interference" claim under the FMLA, an employee must show 1) that he is entitled to an FMLA benefit; 2) his employer interfered with the provision of that benefit; and 3) that interference caused him harm. Adams, 789 F.3d at 427 (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)). The Stevenson Automotive Group defendants argue that plaintiff has not pleaded sufficiently, and indeed cannot satisfy, the second element, where he was not denied leave. They also suggest plaintiff has suffered no harm.

There are two potential bases for plaintiff's interference claim identifiable in the complaint. First, plaintiff suggests that defendants interfered with his FMLA leave where they forced him to return to work on January 2, 2014, without a doctor's approval.[9]  Second, plaintiff suggests that defendants improperly denied him leave for his serious medical condition from January 2, 2014, up to and including January 14, 2014, when he ultimately was granted leave to mourn the loss of his

---

[9] To the extent plaintiff contends that the Stevenson Automotive Group defendants forced his December 2013 leave upon him, an interference claim based in such allegations is not cognizable under the FMLA. Nothing in the FMLA prohibits an employer from placing an employee on involuntary leave, or offering leave to the employee without first receiving a qualifying request. See Moss v. Formosa Plastics Corp., 99 F. Supp. 2d 737, 741 (M.D. La. 2000).

stillborn son, as well as from January 27, 2014, up to and including February 20, 2014, the date on which plaintiff was terminated.

On the first potential ground for liability, plaintiff has not pleaded sufficient facts to survive a motion to dismiss. Plaintiff's lack of identifiable harm renders the pleading deficient. "The FMLA provides no relief unless the employee has been prejudiced by the violation." Ragsdale, 535 U.S. at 89. An employer is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" or, in a case where wages, salary, employment benefits, or other compensation were not denied or lost, "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks . . . of wages or salary for the employee." 29 U.S.C. § 2617(a)(1)(A)(i). In addition, the employer may be liable for "appropriate" equitable relief, where the plaintiff has been terminated or denied a promotion. § 2617(a)(1)(B). Where a plaintiff has failed to allege any monetary or beneficial loss of the type specified in the statute, he cannot state a claim under the FMLA. See Evans v. Books-A-Million, 762 F.3d 1288, 1296 (11th Cir. 2014); Anderson v. Discovery Commc'ns., LLC, 517 F. App'x 190, 198 (4th Cir. 2013); see also Campbell v. Jefferson Univ. Physicians, 22 F. Supp. 3d 478, 486 (E.D. Pa. 2014) (awarding summary judgment where plaintiff failed to prove any evidence of damages); Dodgens v. Kent Mfg. Co., 955 F. Supp. 560, 564–65 (D.S.C. 1997) (awarding summary judgment where employer technically violated FMLA but employee suffered no harm).

As to the Stevenson Automotive Group defendants' alleged December 2013 interference with plaintiff's FMLA rights, through Daniel and McCarthy, plaintiff has pleaded only one type of harm: a longer recovery period. (See Compl. ¶93). While a longer recovery may be an identifiable

type of harm, it is not the type of harm subject to recompense under the FMLA. The complaint does not suggest that the Stevenson Automotive Group defendants' alleged interference with plaintiff's FMLA rights in December 2013 caused him to lose any wages, salary, or other benefits. Moreover, although the FMLA does not require monetary harm in every case, Evans, 762 F.3d at 1296–97, plaintiff also has not alleged any appropriate equitable relief, such as front pay, and was not terminated as a result of the alleged December 2013 interference. Because plaintiff has failed to allege any harm, he cannot state an interference claim and his FMLA claim against the Stevenson Automotive Group defendants, grounded in their alleged December 2013 interference with his FMLA rights, must be dismissed. Edgar v. JAC Prods, Inc., 443 F.3d 501, 507–08 (6th Cir. 2006) (noting FMLA is not a "strict-liability statute").

On the second potential ground, plaintiff also has failed to plead sufficient facts to survive the Stevenson Automotive Group defendants' motion to dismiss. To properly allege harm under the FMLA, a plaintiff must provide facts demonstrating his entitlement to lost wages, salary, or employment benefits; in addition, a plaintiff may satisfy the "harm" element by alleging facts demonstrating his entitlement to equitable relief. See 29 U.S.C. § 2617(a)(1); Evans, 762 F.3d at 1296–97. Plaintiff has not done so. Rather, he merely has alleged that his recovery period was extended. That type of harm is not actionable under the FMLA. Id.

In sum, plaintiff's FMLA interference claim must be dismissed as to the Stevenson Automotive Group defendants. Plaintiff has failed to allege an actionable harm under the statute.

b.    Retaliation

Plaintiff also contends that the Stevenson Automotive Group defendants retaliated against him by terminating his employment after he requested FMLA leave between January 2 and January

25

14, 2014, and for a second time during the week of February 10, 2014, and ultimately took leave from December 18, 2013, until January 2, 2014, and then again from January 15, 2014, until January 27, 2014. In their motion to dismiss, the Stevenson Automotive Group defendants contend that the basis for plaintiff's claim is unfounded, where he does not allege that he was fired for "opposing [a] practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). The Stevenson Automotive Group defendants' argument is without merit.

The FMLA "does not specifically forbid discharging an employee in retaliation for his use of FMLA leave." Dotson, 558 F.3d at 294. However, the Fourth Circuit has recognized that terminating an employee on that basis is a violation of an employee's proscriptive rights under the FMLA, see id. at 294–95, as the FMLA "prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). FMLA retaliation claims, like Title VII retaliation claims, are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 794, 800–06 (1973). Yashenko, 446 F.3d at 550–51.

To prove an FMLA retaliation claim, plaintiff must demonstrate "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Id. at 551. However, at the pleading stage, plaintiff need not specifically articulate every element of the prima facie case under McDonnell Douglas, which "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). Rather, at this early stage, the typical rules for evaluating the sufficiency of the complaint apply. Id. at 510–11. In light of that fact, the court readily concludes plaintiff has stated a claim for retaliation. Plaintiff alleges that he took FMLA leave from December

19, 2013, until January 2, 2014, and again from January 15, 2015, until January 27, 2015.  In

addition, plaintiff alleges that he requested leave from January 2, 2014, until January 14, 2014, and

again during the week of February 10, 2014.  Plaintiff alleges that after his February 10, 2014,

request for leave, McCarthy "admonished" him and advised against "pursu[ing] that course of

action."  (Compl. ¶87).  Finally, plaintiff alleges that 10 days later he was asked to resign, and

ultimately was fired.  See Yashenko, 446 F.3d at 551 ("While evidence as to the closeness in time

'far from conclusively establishes the requisite causal connection, it certainly satisfies the less

onerous burden of making a prima facie case of causality.'") (citing Williams v. Cerberonics, Inc.,

871 F.2d 452, 457 (4th Cir. 1989)).

Thus, defendants' motion to dismiss plaintiff's FMLA claim must be denied on its second

point of attack: plaintiff's retaliation claim.  The FMLA recognizes a cause of action for retaliation

and plaintiff has pleaded sufficient facts to state a claim.

3.      Claim II

Claim II  alleges that plaintiff was actually disabled as a result of his closed head injury and

concussion, and that the Stevenson Automotive Group defendants interfered with his attempts to

exercise his rights under the ADAAA, failed to provide him with a necessary accommodation, and

retaliated against him for attempting to exercise his rights under the ADAAA.  The Stevenson

Automotive Group defendants move to dismiss Claim II, arguing that plaintiff has failed to allege

sufficient facts from which the court can infer that he is "substantially limit[ed]" in one or more

major life activities.

The ADAAA prohibits discrimination against "a qualified individual on the basis of

disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A claim under the ADAAA requires proof that 1) the plaintiff is a "qualified individual with a disability"; 2) he "was discharged," or otherwise suffered an adverse employment action; 3) he "was fulfilling h[is] employer's legitimate expectations at the time" of said adverse employment action; and 4) "the circumstances of [that adverse employment action] raise a reasonable inference of unlawful discrimination." Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004). An individual may establish his status as a "qualified individual with a disability" in one of three ways: 1) proof that the individual is "actually disabled," and that such disability "substantially limits one or more major life activities"; 2) proof that the individual has a record of such impairment; or 3) proof that the individual is "regarded as having such an impairment." § 12102(1).

In Claim II, plaintiff asserts his status as a "qualified individual with a disability" under the "actually disabled" prong of the statute. See § 12102(1)(A). Under that prong, a disability must be an impairment that "substantially limits one or more major life activities." Id. The category of "major life activity" includes activities such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12012(2)(A). In addition, it includes "the operation of a major bodily function." § 12012(2)(B).

The meaning of "disability," and especially the "substantially limits" component of its definition, has been a hot-button issue in recent years. In Sutton v. United Air Lines, 527 U.S. 471 (1999), the United States Supreme Court, interpreting the provisions of the ADA, held that a person was not "substantially limited" in a major life activity, and thus not disabled, where a person could

"tak[e] measures to correct for, or mitigate, a physical or mental impairment." Id. at 482. Likewise, in Toyota Motor Manufacturing v. Williams, 534 U.S. 184 (2002), the Court held that, under the ADA, a person was not "substantially limited" in a major life activity unless the impairment had a "permanent or long term" negative impact. Id. at 198. In response to Sutton and Williams, the Congress passed the ADAAA, which was specifically intended to abrogate their holdings. Pub. L. No. 110-325, 122 Stat. 3553 § 2(b). Congress believed that Williams set an "inappropriately high level of limitation necessary to obtain coverage under the ADA." Id. § 2(b)(5). Thus, the ADAAA "provides that the term 'disability' must be 'construed in favor of broad coverage of individuals . . . to the maximum extent permitted by [the statute's language].'" Class v. Towson Univ., 806 F.3d 236, 245 (4th Cir. 2015) (quoting 42 U.S.C. § 12102(4)(A)).

Notwithstanding the above, plaintiff's allegations are too general to survive the Stevenson Automotive Group defendants' motion to dismiss. An impairment may be "substantially limiting" even though it is transitive. See 29 C.F.R. § 1630.j(1)(ix). However, an impairment's duration is not irrelevant to the "substantially limiting" calculus, but, rather, must be considered in concert with the alleged impairment's severity. See § 1630.2(j)(1)(ix) & (app.). Plaintiff acknowledges that his alleged impairment was to last for less than six months. (See Compl. ¶153) (describing plaintiff's injury as "transitory"); see also 29 C.F.R. §§ 1630.2(j)(ix) & 1630.15(f) (defining "transitory" as lasting less than six months). However, plaintiff did not plead with specificity the expected duration of his impairment. Nor did he allege any facts as to the severity thereof. Where plaintiff has failed to plead the expected duration of his impairment, as well as its severity, the court cannot determine its effect on any major life activity. Accordingly, the Stevenson Automotive Group defendants' motion must be granted.

4.      Claim III

Plaintiff asserts Claim III under the "regarded as" prong of the ADAAA.  42 U.S.C. §

12102(1)(C) & (3).  The Stevenson Automotive Group defendants argue that Claim III must be

dismissed because plaintiff has failed to plausibly allege that he was a "qualified individual with a

disability" under the "regarded as" prong, where he did not plead an essential predicate to the

application of that prong:  that defendants "mistakenly believe[d]" he had an impairment that

substantially limited one or more major life activities.   The Stevenson Automotive Group

defendants' contention is without merit.

The elements of an ADAAA claim brought under the "regarded as" prong essentially are the

same as those elements necessary to state a claim under the ADAAA's "actually disabled" prong.

See Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150, 153 (4th Cir. 2012).  The only difference

between the two claims is the nature of proof required to demonstrate that the plaintiff is a "qualified

individual with a disability."   Under the "regarded as" prong, individuals who are "regarded as

having" a physical or mental impairment that substantially limits one or more of their major life

activities are protected by the ADAAA.  See 42 U.S.C. § 12102(1)(A) & (C).  To be "regarded as"

having such an impairment, the plaintiff must demonstrate that he suffers from "an actual or

perceived physical or mental impairment whether or not the impairment limits or is perceived to

limit a major life activity."   § 12102(3)(A).  Thus, unlike the "actually disabled" prong, which

requires proof that an impairment substantially limits a major life activity, to plead a successful

claim under the "regarded as" prong, a plaintiff need only show that he suffers from an impairment,

whether or not that impairment actual affects him or is only perceived by his employer and

regardless of whether that impairment substantially limits any major life activity.  See id.; see also

29 C.F.R. § 1630.2(*l*)(1); <u>Wolfe v. Postmaster Gen.</u>, 488 F. App'x 465, 468 (11th Cir. 2012); <u>Marsh v. Terra Int'l (Okla.), Inc.</u>, __ F. Supp. 3d __, 2015 WL 4139421, at *13 (N.D. Okla. 2015).

In light of that legal framework, plaintiff has carried his burden of pleading sufficient facts to demonstrate a plausible entitlement to relief as to Claim III. Plaintiff has satisfied the challenged "qualified individual with a disability element," where it is clear that he suffered from two actual impairments, specifically a concussion and closed head injury. Further, plaintiff has successfully pleaded the remaining elements. Plaintiff alleges he suffered an adverse employment action when he was terminated and further alleges that he was meeting the Stevenson Automotive Group defendants' legitimate expectations. Finally, plaintiff's termination occurred under circumstances that give rise to the inference of discrimination. First, the Stevenson Automotive Group defendants knew of plaintiff's impairments, as evidenced by the allegations that defendant Stevenson, as manager of the Stevenson Automotive Group defendants, allowed plaintiff to take extended leave in December 2013, and that plaintiff repeatedly requested leave to recover from his closed head injury in January and February 2014. Second, plaintiff was terminated shortly after sustaining the alleged impairments; plaintiff worked only six weeks after sustaining his alleged injuries prior to being terminated. The timing of the alleged discriminatory acts is sufficient to carry plaintiff's pleading burden on the element of causation. <u>See</u> <u>Williams</u>, 871 F.2d at 457 (timing sufficient to plead causation under Title VII, which employs similar "because of" language).

Nevertheless, the Stevenson Automotive Group defendants propound a mistaken belief requirement. In <u>Haulbrook v. Michelin</u>, 252 F.3d 698 (4th Cir. 2001), the Fourth Circuit held that in order to pursue a claim under the "regarded as" prong a plaintiff must prove that either his employer mistakenly believed he had a physical or mental impairment that substantially limits a

31

major life activity or his employer mistakenly believed that an actual, non-limiting impairment substantially limits a major life activity. Id. at 703 (citing Sutton, 527 U.S. at 489). The Stevenson Automotive Group defendants acknowledge that Haulbrook is based in the since-abrogated Sutton decision, but, still, argue that it remains good law even after the 2008 enactment of the ADAAA. To bolster their argument, defendants direct the court to Coursey v. University of Maryland Eastern Shore, 577 F. App'x 167 (4th Cir. 2014). However, the court is not persuaded.

The pre-amendment version of the ADA provided no guidance for interpreting the "regarded as" prong. See 42 U.S.C. § 12102 (2006). One was "actually disabled" if he had "a physical or mental impairment that substantially limit[ed] one or more major life activities," and was "regarded as" disabled if he was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(A) & (C) (2006). With no statutory guidance, courts relied on the reflexive qualities of the phrase "such an impairment" and interpreted the "regarded as" prong to require the plaintiff prove that he was "regarded as" having a "substantially limiting impairment." To do so, the plaintiff was required to show that either his employer mistakenly believed he had a physical or mental impairment that substantially limited a major life activity or his employer mistakenly believed that an actual, non-limiting impairment substantially limits a major life activity. See, e.g., Haulbrook, 252 F.3d at 703.

However, the "mistaken belief" requirement is inconsistent with the new, more detailed definition of "disability," and specifically the more detailed definition of the "regarded as" prong, used in ADAAA. See 42 U.S.C. § 12102(1)(C) & (3).[10] In effect, it eliminates the reflexive quality

_____

[10] Although the import of the statute is clear, where the "regarded as" portion of the statute, § 12102(1)(C), specifically references a more thorough definition of the "regarded as" contained at § 12102(3), the language itself is quizzical. Section 12102(1)(C) covers individuals who are "regarded as having such an impairment," § 12102(1)(C) (emphasis added), or, in other words, individuals who are regarded as having "a physical or mental impairment that substantially limits one or more major life activities." § 12102(1)(A). Notwithstanding the statute's reflexive language, the statutory definition of "regarded as" makes it clear that one may be "regarded as having [a substantially limiting]

32

of the word "such" and instructs the reader to interpret the "regarded as" language by relying on a separate, newly-added section. See 2 U.S.C. § 12102(1)(C). Under that section, the ADAAA defines "regarded as" to include individuals who have an actual or perceived impairment, regardless of whether that impairment has any effect on a major life activity. § 12102(3)(A). In other words, an individual is "regarded as" disabled where 1) he is actually impaired and such impairment is known to his employer or 2) his employer perceives him to be impaired. Id. Notably, the statute uses the word "impaired," not "disabled."

The regulations confirm that interpretation of the "regarded as" prong, which is to be applied in a "straightforward" manner, without the need to establish any "mistaken belief" on the part of the employer. 29 C.F.R. § 1630.2(l) (app.). For instance, "if an employer refused to hire an applicant because of skin graft scars, the employer has regarded the applicant as an individual with a disability." Id. As that example makes clear, the applicant need not establish that her putative employer had any mistaken belief as to the limiting effects of her impairment, or even that the putative employer knew the precise nature of the impairment. Rather, it is sufficient under the "regarded as" prong that her employer treated her differently on the basis of her impairment. Moreover, the low standard required to proceed under the "regarded as" prong is offset by the "transitory and minor" defense, which was implemented as part of the ADAAA. To circumvent the apparent harshness of the scope of the "regarded as" prong, Congress provided that an individual

---

impairment" even if the impairment is not perceived as substantially limiting a major life activity. § 12102(3)(A); see also, e.g., DiGiosia v. Aurora Health Care, Inc., 48 F. Supp. 3d 1211, 1218 n.4 (E.D. Wis. 2014). As one commentator has noted "[t]he amended provision is therefore analogous to 'wanting a dog that fetches sticks, except that the dog does not have to fetch sticks.'" Jill C. Anderson, Misreading Like A Lawyer: Cognitive Bias in Statutory Interpretation, 127 Harv. L. Rev. 1521, 1567 n.195 (2014).

33

may not be "regarded as" disabled where the relevant impairments are "transitory and minor." 42 U.S.C. § 12102(3)(B).

As the Stevenson Automotive Group defendants point out, this analysis is in direct conflict with the analysis of Coursey, which tacitly endorsed application of the Sutton-Haulbrook test to the amended "regarded as" prong. See Coursey, 577 F. App'x at 174. However, that opinion is not persuasive. First, the use of the "mistaken belief" requirement in an unpublished opinion of the Fourth Circuit does not bind this court. See Pressley v. Tupperware Long Term Disability Plan, 553 F.3d 334, 339 (4th Cir. 2009) (recognizing that ordinarily, unpublished opinions are not accorded precedential value but that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning"). Second, the Coursey court apparently was not asked to decide the vitality of the Sutton-Haulbrook formulation of the "regarded as" prong. Although the issue briefly was raised in the appellant's brief, see Brief of Appellant at 23–24, Coursey, 577 F. App'x 167 (4th Cir. 2014), (No. 13-1626, DE 10), the substance of appellant's argument effectively conceded the continued vitality of the Sutton-Haulbrook test. See id. at 24–25.

Third, and finally, the reasoning used in the unpublished Coursey opinion is inconsistent with the express purpose of the ADAAA. See Pub. L. No. 110-325 § 2(b)(5). Requiring the plaintiff to prove that his employer "mistakenly believed" him to be substantially impaired runs contrary to the express purpose of the ADAAA, to ensure that covered entities "have complied with their obligations" under the statute. See id. (noting that one purpose of the ADAAA is to "convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations"). To require plaintiff prove his employer's "mistaken belief" as to the existence of the limiting nature of

34

his alleged disability improperly would raise the quantum of facts necessary to state a claim under the ADAAA, shift the central focus of the plaintiff's claim away from his employer's compliance with the statute's mandate, and impermissibly restrict coverage under the "regarded as" prong.

In any case, the Stevenson Automotive Group defendants also contend that plaintiff cannot demonstrate he was "regarded as" disabled simply because defendant Stevenson allowed him to take an extended period of leave during December 2013. They argue that such "demonstrations of concern" are insufficient to establish that they "regarded" plaintiff's impairment as "substantially limiting," citing Reynolds v. American National Red Cross, 701 F.3d 143 (4th Cir. 2012). In Reynolds the plaintiff's employer told plaintiff "not to move [a] baby grand piano because of [plaintiff's] back pain." Id. at 153. The Fourth Circuit held that the employer's isolated statement, without more, was insufficient, at the summary judgment stage, to prove that the employer "regarded" the plaintiff as "substantially limited," but, rather, was more appropriately characterized as a statement of "concern for a coworker." Id.

Reynolds is inapplicable here. The Fourth Circuit's holding relied on a different interpretation of what it meant to be "regarded as" disabled, an interpretation founded on the abrogated Sutton case that required a mistaken belief about the substantially limiting nature of an actual or perceived impairment. Id. See generally Haulbrook, 252 F.3d at 703 (stating test for pre-amendment "regarded as" prong). The ADAAA has rendered such a "stray remarks" analysis superfluous; the "regarded as" prong no longer requires the plaintiff to prove his employer regarded his impairment as "substantially limiting." Under the ADAAA, an individual is "regarded as" disabled, and thus is a "qualified individual with a disability," where 1) he is actually impaired and his employer knows of that impairment or 2) his employer perceives him to be impaired. See 42

U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(*l*) & (app.).  As discussed above, plaintiff has plausibly alleged that he was a "qualified individual with a disability" under the "regarded as" prong.

In sum, the court rejects the Stevenson Automotive Group defendants' arguments on what it means to be "regarded as" disabled under the ADAAA.  A plaintiff may be "regarded as" disabled, and thus may be a qualified individual with a disability, where he suffers an actual impairment that is known to his employer or his employer perceives him to be impaired.  That same plaintiff is "regarded as" disabled irrespective of whether his alleged impairment limits any major life activity. See 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(*l*)(1).  Plaintiff has alleged that he was actually impaired and that the Stevenson Automotive Group defendants knew of his impairment. Accordingly, the Stevenson Automotive Group defendants' motion to dismiss must be, and is, denied.

5.      Claim IV

The Stevenson Automotive Group defendants contend that the court should exercise its discretion, decline to exercise supplemental jurisdiction over, and dismiss Claim IV, plaintiff's state law wrongful discharge claim, under 28 U.S.C. § 1367(c).  That argument is grounded in § 1367(c)(3), which permits the court to dismiss a supplemental, state law claim where it has dismissed all claims over which it has original jurisdiction, and turns on the substance of the Stevenson Automotive Group defendants' motion attacking Claim I, Claim II, and Claim III.  Where two claims over which the court has original jurisdiction, Claim I and III, survive defendants' motion to dismiss, defendants' argument as to why Claim IV should be dismissed is moot. Accordingly, the Stevenson Automotive Group defendants' motion mounting an attack on Claim IV is denied.

6.      Claim V

The Stevenson Automotive Group defendants finally move to dismiss Claim V, plaintiff's NCWHA claim, under 28 U.S.C. § 1367(a), arguing that it does not form part of the same constitutional "case or controversy" as Claim I or Claim III because it does not share a "common nucleus of operative facts" with those claims.  28 U.S.C. § 1367(a); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). A district court's supplemental jurisdiction is governed by 28 U.S.C. § 1367, which provides, in relevant part, that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); see also Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 662 (4th Cir. 1998).  For purposes of § 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact" or "are such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding."  Id. (quoting Gibbs, 383 U.S. at 725).

Supplemental jurisdiction, along with its predecessors, ancillary and pendent jurisdiction, have been described as "flexible."  See Washington v. Union Carbide Corp., 870 F.2d 957, 960 (4th Cir. 1989).  Nevertheless, the doctrine's flexibility is not endless.  Supplemental jurisdiction "does not encompass claims when one count is 'separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count.'"  White v. Cty. of Newberry, S.C., 985 F.2d 168, 171 (4th Cir. 1993) (quoting Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 848 & n.12 (4th Cir. 1974)).  Thus, the court examines both the legal elements of Claim V, as compared with Claim I and Claim III, as well as the facts in support of those claims.

Upon careful consideration of the commonalities between Claim V and plaintiff's remaining federal claims, the court determines that Claim V does not form part of the same case or controversy and must be dismissed.[11]

Claim V finds its basis not only in plaintiff's termination but also in the larger context of defendants' allegedly unlawful method for calculating, and withholding, his earned compensation. Plaintiff alleges that defendants hired Wayne Fortier as their Chief Financial Officer "sometime in 2011 or 2012," and that thereafter Fortier "implemented a program of charge backs and 'packs' against commissions/bonuses/incentives earned by [plaintiff] and other similarly situated employees." (Compl. ¶101). Plaintiff contends that this system of deductions was never reduced to writing, and that, as a result the Stevenson Automotive Group defendants began withholding his earned pay without his consent, in violation of N.C. Gen. Stat. § 95–25.8. Plaintiff alleges that he became aware of this system only after he was terminated. In addition, plaintiff alleges that, at the time of his termination, the Stevenson Automotive Group defendants failed to compensate him fully for his earned wages and commissions, consistent with the previously implemented payment policy, as well as his accrued vacation time, incentives, and longevity pay, in violation of N.C. Gen. Stat. § 95–25.7.

Claim I, as well as Claim III arise out of plaintiff's December 2013 closed head injury and the effects accruing therefrom. The facts supporting Claim I and Claim III all are confined to the roughly two-month period between plaintiff's injury and his subsequent termination. Generally,

---

[11] Where the court already has dismissed Claim II as pleaded, see supra § B.3, the court need not address the Stevenson Automotive Group defendants' § 1367(a) argument with respect to that Claim. However, if the court were to analyze whether or not Claim II and Claim V formed part of the same case or controversy, that is, whether they shared a common nucleus of operative fact, the court would hold that they do not.

these claims require plaintiff prove that he was entitled to a benefit, such as leave, an accommodation, or continued employment, and that defendants took steps to deny him that benefit.

Neither Claim I, nor Claim III, share such a common nucleus of operative fact with Claim V to support the exercise of supplemental jurisdiction over that claim under § 1367(a). Plaintiff's federal claims require reference to a finite period of time, the legal obligations arising out of plaintiff's injuries, and defendants' response to those legal obligations. By contrast, resolution of Claim V demands analysis of a larger period of time, as well as a different type of evidence. In particular, Claim V requires analysis of record keeping and employee compensation practices, as compared to plaintiff's federal claims, which require only analysis of individual actions. Moreover, although Claim V, at least in part, coincides with plaintiff's allegedly discriminatory or retaliatory termination, that small commonality between Claim V and Claim I and Claim III is insufficient to support the exercise of supplemental jurisdiction. Proof of Claim I, as well as Claim III, will require evidence as to the impetus behind plaintiff's termination. On Claim V, however, the fact of and justifications behind plaintiff's termination are of no moment, and the only legal question is strict compliance with the terms of the statute.

In sum, Claim V does not share a common nucleus of operative fact with Claim I or Claim III. Given the legal and factual distance between plaintiff's remaining federal claims and Claim V, it hardly can be said that plaintiff would ordinarily be expected to try them together, in one judicial proceeding. Accordingly, Claim V must be dismissed.

C.     Defendant John Stevenson's Motion to Dismiss

Defendant Stevenson's motion to dismiss largely mirrors those arguments made by the Stevenson Automotive Group defendants. In particular, defendant Stevenson moves to dismiss the

claims against him because plaintiff fails to allege that defendant Stevenson was his "employer." The court agrees. Plaintiff's allegations against defendant Stevenson are quintessentially different from those levied against the Stevenson Automotive Group defendants. Plaintiff's allegations against defendant Stevenson sound not in his capacity as an employer, but, rather, in his capacity as the manager or owner of the Stevenson Automotive Group defendants. Accordingly, defendant Stevenson's motion must be granted to the extent plaintiff asserts his claims against defendant Stevenson in his capacity as an "employer."

In addition, inasmuch as plaintiff asserts his claims against defendant Stevenson in his capacity as manager or owner of the Stevenson Automotive Group defendants, plaintiff's claim is legally unfounded. Although executives typically may be liable under the FMLA, see 29 U.S.C. § 2611(d); 29 C.F.R. § 825.104(d); Brock v. Hamad. 867 F.2d 804, 808–09 & n.6 (4th Cir. 1989), the complaint falls short of actually alleging that defendant Stevenson had any direct role in the transactions giving rise to plaintiff's various claims. Notably, any alleged interference or retaliation occurred at the hands of either McCarthy or Daniel. Accordingly, Claim I, to the extent it is alleged against defendant Stevenson in his managerial capacity, must be dismissed under Rule 12(b)(6). As to plaintiff's ADA claims, plaintiff concedes that defendant Stevenson cannot be liable in his capacity as a manger or owner on either Claim II or Claim III.

In addition, plaintiff suggests, but does not outright concede, that Claim IV, his wrongful discharge claim, similarly should be dismissed to the extent it sounds against defendant Stevenson in his managerial capacity. The court concludes that it must. Under North Carolina law a wrongful discharge claim cannot be brought against an individual. See Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 571–72 (1999) (noting a claim for wrongful discharge accrues where "[a]n

employer wrongfully discharges an at-will employee" for an unlawful reason); see also Iglesias v. Wolford, 539 F. Supp. 2d 831, 839 (E.D.N.C. 2008).

In sum, each of plaintiff's claims against defendant Stevenson must be dismissed. Plaintiff has failed to allege successfully that defendant Stevenson was his "employer" under the "joint employment" or "integrated employer" theories of liability. In addition, on the facts alleged defendant Stevenson cannot be liable to plaintiff under the FMLA in his capacity as owner or manager of the Stevenson Automotive Group defendants. Moreover, defendant Stevenson is not susceptible to liability under the ADA, or on plaintiff's wrongful discharge claim, as a matter of law. The court need not address Claim V as it relates to defendant Stevenson, where it does not form part of the same case or controversy as plaintiff's remaining claims. In so holding, the court rests on its prior analysis.

## CONCLUSION

Based on the foregoing, the Stevenson Automotive Group defendants' motion to dismiss (DE 24) is GRANTED in PART and DENIED in PART. Claim I, inasmuch as it alleges interference with plaintiff's proscriptive rights under the FMLA, as well as Claim II and Claim V are DISMISSED WITHOUT PREJUDICE as to those defendants. Claim I, to the extent it alleges retaliation under the FMLA, as well as Claim III and Claim IV, all may proceed. Defendant John Stevenson's motion to dismiss (DE 22) is GRANTED. Each of plaintiff's claims are DISMISSED WITHOUT PREJUDICE inasmuch as they are asserted against defendant Stevenson in his capacity as an employer. As to plaintiff's claims asserted against defendant Stevenson in his managerial capacity, Claim I fails and is DISMISSED WITHOUT PREJUDICE where plaintiff has not alleged sufficient facts in support of that claim. In addition, to the extent Claim II, Claim III, and Claim IV

sound against defendant Stevenson in his capacity as manager or owner of the Stevenson Automotive Group, those claims are DISMISSED WITH PREJUDICE, as no amendment to the complaint could cure their legal deficiencies. Finally, to the extent Claim V is lodged against defendant Stevenson in his managerial capacity, it is DISMISSED WITHOUT PREJUDICE where it does not share a common nucleus of operative fact with any of plaintiff's federal claims.

SO ORDERED, this the 24th day of February, 2016.

LOUISE W. FLANAGAN
United States District Judge